UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH SAVILLE,

       Plaintiff,                    CIVIL ACTION NO. 07-11362

       v.                              DISTRICT JUDGE GEORGE CARAM STEEH

COMMISSIONER OF                MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action for judicial review of the defendant's decision denying plaintiff's application for Social Security disability benefits. Plaintiff alleged that she became disabled April 29, 2005, due to bilateral carpal tunnel syndrome, right shoulder pain, and some hip pain. Plaintiff had a hearing before an ALJ and was represented there by the same lawyer who now files this action. The ALJ applied the five step analysis for evaluation of disability claims and found, at step five, that while plaintiff could not perform her past relevant work, she could perform other work which existed in significant numbers in the economy, and accordingly, was not disabled. Plaintiff contends that the decision is not supported by substantial evidence because the ALJ erred as a matter of law by considering the flawed testimony of the vocational expert who testified at the hearing and by failing to properly evaluate the testimony of plaintiff's treating physician. Defendant contends otherwise.

For the reasons discussed in this Report, it is recommended that the decision denying disability benefits be affirmed.

**I. Legal Standards**

    **A. Determination of Disability**

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The claimant bears of the burden of proving that she is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims. See 20 C.F.R. § 404.1520. As discussed in Foster, Id. at 354 (citations omitted), this process consists of the following:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

### B. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Brainard, 889 F.3d at 681. Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273. A reviewing court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001).

## II. Analysis

### A. Background

At the time of the decision by the ALJ, plaintiff was 47 years old. She completed high school and has past relevant work as an assembler and forklift operator. (Tr. 87, 128, 141) The ALJ found that plaintiff could perform some jobs at the light exertional level including security guard, transportation attendant, and counter clerk.

Plaintiff reported to social security that her past work required her to lift and carry less than ten pounds frequently. She carried engine parts, assembled automobile engines which required repetitive screwing and use of torque guns. (Tr. 57) It is difficult for her to clean house, grasp things, drive long distances, peel vegetables, and open jars. Her hands go numb and start to tingle when she cares for her hair and engages in other tasks. (Tr. 65-66) She can lift only one-half to one pound maximum, walk for 30 minutes, and has trouble reaching. (Tr. 69) She uses wrist braces and splints. (Tr. 70) The pain affects her ability to concentrate and worsens with activity. She was on restrictions at work but then the pain became too much and she stopped working April 29, 2005. (Tr. 73)

Plaintiff has somewhat limited medical records. (Tr. 95-124) Dr. V. Pasupuleti, M.D., performed EMG studies on plaintiff in March, 2005. They were reported as abnormal–severe on the right and moderate on the left wrist. (Tr. 117-119) Plaintiff treated with Dr. Larson and on May 4, 2005, was diagnosed with right hip bursitis and right carpal tunnel syndrome. (Tr. 101) Plaintiff was on Ibuprofen and was prescribed Clinoril for two weeks and then as needed. She was instructed to use heat for the right hip and to stretch. Dr. Larson's notes of September 16, 2005, indicate that plaintiff has had long standing carpal tunnel syndrome (CTS) and has been on disability from work since May 2, 2005. She had four EMGs and brought copies of the result to McLaren Hospital for review. The EMGs showed severe CTS, and past x-rays showed mild to moderate arthritis in the right elbow but no abnormalities on the right shoulder. Plaintiff stated that she was wearing her splints as much as possible but that the burning from her neck down has gotten worse. Plaintiff was continued off work until October 31, 2005. Later in the month plaintiff underwent an MRI at the request of Dr. Larson, M.D. This study was performed as a result of plaintiff's clinical symptoms of right shoulder pain radiating to the elbow. The MRI showed mild degenerative disease with mild AC inferior marginal osteophyte and mild impingement with multifocal partial supraspinatus tendon tears without complete, full thickness

rotator cuff/supraspinatus tendon tear. There was a possible small tear of the anterior, superior glenoid labrum with small associated shoulder effusion. (Tr. 95)

In November 2005, plaintiff had her initial evaluation with Dr. Anthony de Bari, M.D., in Saginaw. On examination, she had mild to moderate tenderness of the right shoulder, pain with adduction and forward flexion of the same. Range of motion was full. There were some mildly positive impingement signs with a positive Phalen's and Tinel's signs bilaterally. Hands were not atrophied. Otherwise, the neurological exam was normal. Dr. de Bari reviewed the MRI and noted the findings as above with arthritis and fluid in the joints. The impression was partial rotator cuff of the right shoulder. Dr. de Bari recommended conservative treatment with physical therapy. (Tr. 102-3) Plaintiff did not complete or attend the physical therapy after the initial consult. She requested to be discharged but did not give a specific reason. (Tr. 106)

Plaintiff was evaluated in November, 2005, by Dr. Thomas H. Beird, M.D., an orthopedic surgeon. He noted a six year history of progressively worsening numbness, tingling, prickling, burning, and aches and pain. She has been off work for these conditions and shoulder pain for six months and her hands are no better. Splints and anti-inflammatory medication provide only some relief. He noted Tinel's and Phalen's signs, a Finkelstein's and grinds test present over the right dorsal extensor. The plan was "Release." (Tr. 105) In February, 2006, Dr. Beird performed a carpal tunnel and proximal annular pulley release on the right wrist and long finger. (Tr. 121-123)

A physical residual functional capacity assessment in January 2006 by a medical consultant concludes that plaintiff can lift 20 pounds occasionally, ten pounds frequently, stand or walk six hours, sit six hours, and unlimited push/pull for hand/foot controls. (Tr. 110) She was restricted with respect to repetitive manipulation. (Tr. 112)

In May, 2006, Dr. Larsen completed a form that indicated that plaintiff could lift and carry less than ten pounds, stand/walk for two hours, must alternate sitting, and had severe

push/pull limitations on the right upper extremities and mild limitations on the left.  She occasionally requires Vicodin.  The limitations have existed about 13 months and she could only work two hours a day without significant disruption.  (Tr. 124)

On June 15, 2006, plaintiff had her hearing with ALJ Bennett Engelman.  (Tr. 125)  In addition to plaintiff and her attorney, Ann Tremblay was present and testified as the vocational expert.  The ALJ asked the expert to opine as to a hypothetical claimant with a limitation to light work (due to the standing or walking but limited lifting), occasional use of the hands and arms, not lifting the dominant [right] hand above the shoulder, the ability to sit down during the workday or stand during the workday, with the job being primarily standing, but limiting the lifting requirements.  (Tr. 142)  The VE opined that such a person could do light, unskilled work with approximately 6,000 positions in the lower peninsula of Michigan.  Those jobs would include security guard, transportation attendant, school bus monitor, and counter clerk.  These jobs have a sit/stand option.  Such a person would need to be able to concentrate 50% of the time.  (Tr. 143)  If such a person needed to nap one to two times a day for one to two hours, then work would be precluded.  Id.  The lifting requirements would be generally 11 to 20 pounds and it could be done with the non-dominant hand.  (Tr. 144)

### B.  Hypothetical to the Vocational Expert

In a social security case, the defendant can meet its burden to show that there is work existing in significant numbers which plaintiff can perform by relying on the testimony of a vocational expert.  Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).  In order for that testimony to constitute substantial evidence, each element of the hypothetical must accurately describe the plaintiff's impairments.  Id. at 1036.

The ALJ may rely on the vocational expert's testimony in response to a hypothetical question if the question accurately portrays plaintiff's individual physical and mental

impairments. In this case, the VE was asked to identify light work jobs with "limited lifting." Light work is defined as:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §404.1567(B). Upon further questioning, the weight of the lifting was 11 to 20 pounds, but only occasionally. (Tr. 141, 143) Plaintiff contends that this is flawed. The court disagrees. The court notes however that the hypothetical was not as clear as it should have been and the analysis within the written opinion was cursory and not well articulated. However, the RFC assessment identified plaintiff as being able to lift the full 20 pound weight limit, even before her surgery. She underwent carpal tunnel surgery in February 2006 and it was apparently successful. No notes are provided by plaintiff which show the results of the surgery, the follow up care, or the surgeon's ultimate evaluation. Neither does plaintiff offer any medical evidence from Dr. Larson post-surgery in support of the limitations on plaintiff's ability to work. Given the medical evidence, the objective findings, the plaintiff's status post-surgery, and her report of daily activities, the court concludes that the hypothetical adequately states the plaintiff's limitations of record and it was not error for the ALJ to rely on it.

### C. Dr. Larson's Medical Opinion

Plaintiff argues that the treating physician's report was not given the appropriate weight. It is true that great deference is to be given to medical opinions and diagnoses of treating physicians. Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985). It is also true that complete deference is given when said opinions are uncontradicted. However, in both instances, the opinion of the treating physician must be based on sufficient medical data. Garner v. Heckler,

745 F.2d 383, 391 (6th Cir. 1984); Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir. 1984). Where the doctor's physical capacity evaluation contains no substantiating medical opinions and is inconsistent with the doctor's previous opinions, the defendant is not required to credit such opinions. Villarreal v. HHS, 818 F.2d 461, 463 (6th Cir. 1987). The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician. Warner v. Commissioner of Social Security, 375 F.3d 387 (2004) (citing Harris v. Heckler, 756 F.2d at 435).

Plaintiff claims the ALJ did not properly evaluate her complaints of disabling pain. The ALJ found they were not credible. Pain caused by an impairment can be disabling, but each individual has a different tolerance of pain. Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir. 1984). Therefore, a determination of disability based on pain depends largely on the credibility of the plaintiff. Houston, 736 F.2d at 367; Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997); Villarreal v. Secretary of HHS, 818 F.2d 461, 463 (6th Cir. 1987). Because determinations of credibility are peculiarly within the province of the ALJ, those conclusions should not be discarded lightly. Villarreal, 818 F.2d at 463 and 464.

In Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir. 1986), this circuit modified its previous holdings that subjective complaints of pain may support a claim of disability. Subsequently, the Social Security Act was modified to incorporate the standard. 20 C.F.R. § 404.1529 (1995). A finding of disability cannot be based solely on subjective allegations of pain. There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. Jones v. Secretary of HHS, 945 F.2d 1365, 1369 (6th Cir. 1991).

In this case, plaintiff had CTS and shoulder pain. She was prescribed physical therapy which she did not attend. Instead, it appears that she determined to undergo surgery to release the impingement. Nothing in the record indicates that this surgery was anything but successful. Thus, post-surgery she has not demonstrated the existence of a condition that could reasonably give rise to the disabling pain she alleges or the need to take Vicodin. In addition, her shoulder problems appear to be improving with conservative therapy. Her daily activities are inconsistent with an ability to work only two hours a day. Dr. Larson does not even mention the surgery in plaintiff's Medical Source Statement and no prior medical evidence alludes to a need for Vicodin. Thus, the ALJ properly gave this unsupported opinion little weight.

It should also be noted that a statement by plaintiff's physician that he or she is "disabled" or "unable to work" does not mean the defendant will determine that individual plaintiff is disabled. The defendant is responsible for reviewing the medical findings and other evidence that support a physician's statement of disability and determine whether or not said individual is disabled. 20 C.F.R. §404.1527.

The ALJ did not find plaintiff's complaints of pain fully credible, in light of the medical evidence, her daily activities, her alleged need to nap though not indicated in any medical records, and her pending claims for worker's compensation and retirement disability benefits adversely bearing on her efforts to work. (Tr. 18) These determinations are not challenged on appeal here.

After carefully considering the medical evidence and the briefs, the court concludes that the defendant's decision is supported by substantial evidence and the decision denying benefits should be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS,

932 F.2d 505, 508 (6th Cir. 1991); <u>United States v. Walters</u>, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan  
Virginia M. Morgan  
United States Magistrate Judge

Dated: December 3, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on December 3, 2007.

s/Jane Johnson  
Case Manager to  
Magistrate Judge Virginia M. Morgan